Edward J. Wynne   (SBN 165819)
ewynne@wynnelawfirm.com
George R. Nemiroff (SBN 262058)
gnemiroff@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone    (415) 461-6400
Facsimile    (415) 461-3900

Gregg I. Shavitz (*pro hac vice*)
gshavitz@shavitzlaw.com
Alan L. Quiles   (*pro hac vice*)
aquiles@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Ste. 285
Boca Raton, FL 33431
Telephone    (561) 447-8888
Facsimile    (561) 447-8831

Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE C. BRANCO, KATHY ELLIOTT, individually on behalf of other members of the general public similarly situated and as representatives and proxies for the State of California,<br><br>             Plaintiff,<br><br>    vs.<br><br>ORCHARD SUPPLY COMPANY, LLC,<br><br>           Defendant. | Case No.: 5:18-cv-00531-EJD<br><br>**PLAINTIFFS' AMENDED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     February 13, 2020<br>Time:    11:00 a.m.<br>Location:  Courtroom 4, 5th Floor<br>           280 S. 1st Street<br>           San Jose, CA 95113<br>Judge:   Hon Edward J. Davila<br><br>Complaint Filed: January 24, 2018 |

**NOTICE OF MOTION AND MOTION**

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on February 13, 2020 at 11:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. Edward J. Davila presiding, United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California, Plaintiffs Lawrence C. Branco and Kathy Elliott will, and by motion do, respectfully move the Court for final approval of the proposed class action settlement.

Specifically, Plaintiffs respectfully request that the Court (1) grant final approval for the proposed class action settlement adjudging the terms of the settlement to be fair, reasonable and adequate, and directing that its terms and provisions be carried out; (2) approve the payment of a service enhancement to the named plaintiffs; and (3) approve payment of class counsels' fees and costs; and, (4) approve the settlement administrator's payment.

Plaintiffs make this motion on the grounds that the proposed settlement is fair, reasonable and adequate. This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Supplemental Declaration of Cassandra Cita, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


Dated: February 11, 2020                    WYNNE LAW FIRM


                                            /s/ *Edward J. Wynne*

                                            Edward J. Wynne

                                            Attorneys for Plaintiffs

**TABLE OF CONTENTS**

I.     PREFATORY STATEMENT ........................................................................ 1

II.    INTRODUCTION ..................................................................................... 1

III.   PROCEDURAL STATEMENT ................................................................... 2

    A.     LITIGATION UP TO FINAL APPROVAL ...................................... 2

    B.     SETTLEMENT ADMINISTRATION .............................................. 5

IV.    SUMMARY OF SETTLEMENT TERMS ....................................................... 6

    A.     SETTLEMENT FUND .................................................................. 6

    B.     CLASS DEFINITIONS ................................................................. 7

    C.     CLASS REPRESENTATIVE AND CLASS COUNSEL ................................ 7

    D.     NOTICE PROCEDURE ................................................................ 7

    E.     PLAN OF ALLOCATION .............................................................. 8

        1.     SETTLEMENT CLASS MEMBER ALLOCATION ........................... 8

        2.     ATTORNEY'S FEES, COSTS AND ENHANCEMENTS ................... 8

        3.     LWDA PAYMENT ................................................................. 8

        4.     NOTICE ADMINISTRATION ................................................... 8

        5.     CY PRES BENEFICIARIES ...................................................... 9

IV.    THE STANDARDS FOR FINAL APPROVAL ARE SATISFIED ........................... 9

    A.     THE STANDARD FOR FINAL APPROVAL ...................................... 9

    B.     THE SETTLEMENT IS ENTITLED TO A PRESUMPTION OF FAIRNESS........................................................................... 9

        1.     THE SETTLEMENT WAS REACHED THROUGH ARM'S-LENGTH NEGOTIATIONS ..................................................... 10

        2.     SUBSTANTIAL INVESTIGATION HAS BEEN COMPLETED...... 10

        3.     CLASS COUNSEL IS EXPERIENCED AND ENDORSES THE SETTLEMENT ..................................................................... 10

        4.     THERE ARE NO OBJECTIONS TO THE SETTLEMENT ............... 11

    C.     THE RISK AND EXPENSE OF FURTHER LITIGATION .......................... 11

D.    THE AMOUNT OFFERED IN SETTLEMENT .............................................. 13

    1.    EVALUATION OF THE OVERALL SETTLEMENT AMOUNT..... 13

    2.    EVALUATION OF THE PAGA ALLOCATION ............................... 14

E.    THE REQUESTED CLASS REPRESENTATIVE AWARDS
SHOULD BE GRANTED ................................................................................ 15

V.    CONCLUSION.......................................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

**FEDERAL CASES**

3
*Bautista v. Harvest Management Sub LLC,*
    2014 WL 12579822 (C.D. Cal. July 14, 2014) ............................................................. 15

4

5
*Boyd v. Bechtel Corp.,*
    485 F.Supp. 610 (N.D. Cal. 1979) ................................................................................ 10

6
*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ......................................................................................... 9

7

8
*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981) ............................ 10

9
*Fisher Bros. v. Cambridge-Lee Industries,*
    630 F.Supp. 482 (E.D. Pa. 1985) .................................................................................. 10

10

11
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 9

12
*Hopson v. Hanesbrands,*
    CV 08-0844 EDL, 2009 WL 928133 (N.D. Cal. April 3 2009) ................................ 15, 16

13

14
*In re Heritage Bond Litigation,*
    2005 WL 1594403 ............................................................................................................ 9

15
*In re Linkedin User Privacy Litig.,*
    309 F.R.D. 573 (N.D. Cal. 2015) .................................................................................. 16

16

17
*In re M.L. Stern Overtime Litig.,*
    No. CV 07-0118 BTM (JMAx), 2009 WL 995864 (S.D. Cal. April 13, 2009) .............. 15

18
*In re Warner Communications Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986) ............................ 10

19
*Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau,*
    No. C 07-00362 MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ........................... 16

20

21
*Joel A. v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000) ............................................................................................. 9

22
*Noll v. eBay,*
    309 F.R.D. 593 (N.D. Cal. 2015) .................................................................................. 17

23

24
*Officers for Justice v. Civil Service Com.,*
    688 F.2d 615 (9th Cir. 1982) .................................................................................... 10, 11

25
*Villalobos v. Calandri Sonrise Farm LP,*
    No. CV 2122615 PSG (JEMx), 2015 WL 12777959, (C.D. Cal. Dec. 4, 2015) ............. 15

26

27
*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (2002) ....................................................................................................... 8

28

**STATE CASES**

*Brinkel et al. v. Westamerica Bank,*
    Marin Superior Court Case No., CIV 1303112 ................................ 14

*Dunk v. Ford Motor Company,*
    48 Cal.App.4th 1794 (1996) ................................................ 10, 11

*Duran v. U.S. Bank N.A.,*
    59 Cal.4th 1 (2014) ............................................................ 12

*Nordstrom Comm'n Cases,*
    186 Cal.App.4th 576 (2010) .................................................. 15

**STATUTES, RULES & REGULATIONS**

29 U.S.C.,
    § 216(b) .......................................................................... 2

Cal. Bus. & Prof. Code,
    § 17200 ........................................................................... 2

Cal. Labor Code,
    § 203 .............................................................................. 2

Cal. Lab. Code,
    § 226 .............................................................................. 2

Cal. Labor Code,
    § 510 .............................................................................. 2

Cal. Labor Code,
    § 1194 ............................................................................ 2

Cal. Labor Code,
    § 2698 ......................................................................... 1, 3

Cal. Labor Code,
    § 2699 ............................................................................ 8

Cal. Labor Code,
    § 2802 ............................................................................ 3

Federal Rules of Civil Procedure,
    Rule 23 .................................................................... passim

## I.    PREFATORY STATEMENT

After the February 6, 2020 hearing on Plaintiff's Motion for Final Approval and Motion for Attorney Fees, Costs and Class Representative Enhancement Awards (Dkt. Nos. 50 and 60), the Parties met and conferred and determined that in order to promote efficiency and judicial economy, Plaintiffs would file an amended motion, rather than supplement the prior motion.

## II.    INTRODUCTION

Plaintiffs Lawrence C. Branco and Kathy Elliott (collectively "Plaintiffs") seek final approval of a $1,250,000 non-reversionary all-cash settlement between Plaintiffs and their former employer, Defendant Orchard Supply Co., LLC ("Defendant" or "OSH"), to settle various claims under the California Labor Code and the Fair Labor Standards Act on behalf of an uncertified class of Assistant Store Managers ("ASM(s)") employed in California, Oregon and Florida. The separate sub-classes for which Plaintiffs seek final approval are as follows:

- Rule 23 Class of current and former ASMs employed in California ("Rule 23 Class"); and

- Fair Labor Standard Act Class of ASMs employed nationwide ("FLSA Class").

In addition, the parties seek to settle claims that Plaintiffs assert pursuant to California's Private Attorney General Act (PAGA) (Cal. Labor Code § 2698 *et seq*.) for underlying Labor Code violations allegedly committed against ASMs who worked for OSH in California on or after November 20, 2016.

The proposed settlement before this Court will dispose of this litigation in its entirety.

On August 8, 2019, the Court granted preliminary approval of this settlement. (Dkt. 58.) The Preliminary Approval Order appointed Simpluris Inc. ("Simpluris" or "Administrator" or "Settlement Administrator") as the Settlement Administrator and approved the proposed Class Notices, Claim Form and Exclusion Form. (*Id*.) Plaintiffs hereby report that the Rule 23 Notice Packet and FLSA Notice Packet were mailed by the Settlement Administrator to all 93 members of the conditionally certified Rule 23 and FLSA Classes. (Dkt. 60-2, Cita Decl., ¶ 7.) A website was created for class members to read a description of the case, see the Notices, submit an online claim form, download important documents, see important dates, and contact the

Settlement Administrator and/or Plaintiffs' counsel. (*Id.,* ¶ 3.)

Class members had until October 11, 2019 to opt out and January 7, 2020 to object to the settlement. Fully 51 Class Members, or 59% of the Rule 23 Class, have submitted claim forms claiming 67% of the Net Settlement Amount. (Supplemental Declaration of Cassandra Cita Regarding Notice and Settlement Administration, "Supp. Cita Decl.," ¶ 6.) No Class Member has objected to the settlement and only one Class Member has excluded herself from the Settlement. (Dkt. 60-2, Cita Decl., ¶¶ 12-13.) Rule 23/FLSA Class Members can expect to receive on average $7,926.79 and the highest recovery is $18,760.36. (Supp. Cita Decl., ¶ 7.)

Plaintiffs respectfully submit that the favorable reaction of Class Members to the Settlement supports a finding that the settlement is fair, reasonable and adequate. As discussed more fully below, the proposed Settlement provides substantial economic benefits to a workforce and is in the best interests of the Class. Plaintiffs request that the Court grant final approval to the Settlement and authorize the parties to proceed with payment to the Class Members.

### III.    PROCEDURAL STATEMENT

#### A.    Litigation Up to Final Approval

On January 24, 2018, Plaintiff Lawrence C. Branco ("Branco") filed this action in this Court alleging various wage claims against Defendant Orchard Supply Co., LLC. The lawsuit was styled as a class and collective action on behalf of a proposed class of Assistant Store Managers and alleged claims for overtime due to Defendant's misclassification of ASMs under the Fair Labor Standards Act (29 U.S.C. § 216(b).), the California Labor Code (Cal. Labor Code §§ 510, 1194) and Unfair Competition Laws (Cal. Bus. & Prof. Code § 17200 *et seq*.). Plaintiff alleged derivative claims under California law for meal and rest period violations (Cal. Bus. & Prof. Code §17200 *et seq*.), waiting time penalties (Cal. Labor Code § 203), and inaccurate itemized wage statements (Cal. Lab. Code § 226). (Dkt. 1.)

On May 3, 2018, the First Amended Complaint ("FAC") was filed. (Dkt. 31.) The FAC added Plaintiff Kathy Elliott ("Elliott") as class representative. The FAC also added a claim alleging Defendant failed to reimburse ASMs for business expenses incurred in the discharge of

1   their duties (Cal. Labor Code § 2802) and a claim brought pursuant to Private Attorneys

2   General Act (PAGA) (Cal. Labor Code § 2698 *et seq*.). The FAC is the operative complaint in

3   the action. On May 17, 2018, Defendant filed its Answer to the FAC in which it asserted several

4   defenses, including the defense that many potential claimants were subject to arbitration

5   agreements. (Dkt. 34.)

6       In May 2018, all parties propounded written discovery. On May 9, 2018, Plaintiffs

7   propounded a set of Requests for Production and Interrogatories to Defendant. In response,

8   Defendant submitted responses and produced over 7,000 pages of documents to Plaintiffs. On

9   May 24, 2018, Defendant propounded a set of Requests for Production and Interrogatories to

10  each of the named plaintiffs. In response, Plaintiffs provided individual responses and produced

11  approximately 1,200 pages of documents to Defendant. On November 15, 2018, Plaintiffs took

12  the deposition of Defendant's designated corporate representative on numerous topics.

13      In August 2018, the parties agreed to early mediation before Jeffrey A. Ross. Leading up

14  to mediation, Plaintiffs discovered that a portion of the putative class was not covered by a valid

15  arbitration agreement. Defendant agreed with Plaintiffs' assessment. For the purposes of the

16  mediation, the parties agreed to limit the mediation to those class members who were not

17  covered by a valid arbitration agreement. In preparation for mediation, Defendant provided

18  relevant data regarding the putative class, including the number of current and former class

19  members (who were not subject to valid arbitration agreements), the workweeks worked by

20  these class members during the statutory period, and their average salary, including bonuses.

21  The mediation, held on November 29, 2018, was unsuccessful. The parties nevertheless

22  continued to communicate through the mediator.

23      Prior to the November 29, 2019 mediation, Plaintiffs also discovered that Defendant had

24  begun closing its stores nationwide and was soliciting severance agreements from its recently

25  laid off or soon-to-be laid off ASMs. The severance agreements offered purported to release the

26  Class Members' claims against Defendant for all claims alleged in the action, among others.

27  Numerous putative class members contacted Plaintiffs' counsel requesting information about

28  the litigation and Counsel's opinion regarding the severance agreement. In the end, the number

of putative Class Members who executed severance agreements reduced the size of the proposed Rule 23 Class considerably.

After the unsuccessful mediation, Plaintiffs continued their discovery efforts and prepared Plaintiffs' Motion for Conditional Certification of the FLSA claim. (Dkt. 44.) Plaintiffs were able to obtain 20 declarations from Class Members in support of their Motion for Conditional Certification which was filed on February 19, 2019. Of the 20 declarations obtained by Plaintiffs, 4 of the declarants were ASMs who had entered into a valid arbitration agreement during the course of their employment but did not enter into a severance agreement. An additional 5 declarants entered into both a valid arbitration agreement and a severance agreement. These individuals have been included in the Rule 23 Class despite having entered into a valid arbitration agreement and/or a severance agreement because they participated in the litigation and their efforts aided Plaintiffs in achieving a settlement on behalf of the class.

On February 21 and 22, 2019, Defendant took the depositions of Plaintiffs Branco and Elliott, respectively, in San Francisco, California.

In March 2019, the parties ramped up settlement negotiations through the mediator. On March 19, 2019, the parties agreed to a settlement, in principle. On March 26, 2019, the parties reported to the Court that a settlement had been reached by submitting a Joint Notice of Settlement; Stipulation and Proposed Order to Vacate Dates and Set Deadline to Move for Preliminary Approval of the Settlement. (Dkt. 48.) On March 29, 2019, the Court granted the parties' Stipulation and vacated all existing dates and set the deadline for Plaintiffs to file their Motion for Preliminary Approval. (Dkt. 49.) The parties thereafter submitted another stipulation to extend the date to file and have the Motion for Preliminary Approval heard under the current schedule. (Dkt. 50-51.)

On June 10, 2019, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement. (Dkt. 52.) The Court heard the Motion on August 8, 2019 and granted it, issuing a minute order at the conclusion of the hearing. (Dkt. 57.) That same day the Court executed the Order For Preliminary Approval of Class Action Settlement, Setting of Fairness Determination Hearing and Approval of Notice to the Class and certified the sub-classes as set forth in the

1    parties' Settlement Agreement.

2         On August 11, 2019, Plaintiffs filed their Motion for Attorneys' Fees and Costs and

3    Class Representative Award. (Dkt. 59.) In support of the Motion were the declarations of Class

4    Counsel Edward J. Wynne (Dkt. 59-1) and Gregory I. Shavitz (Dkt. 59-2).  The declarations of

5    Class Representatives Branco and Elliott were also offered in support wherein each outlined

6    their contributions to the litigation justifying their class representative enhancement awards.

7    (Dkt. 59-3 & 59-4.)

8    **B.    Settlement Administration**

9         After the Court granted preliminary approval, on August 22, 2019, Defendant provided

10   the class data to the Settlement Administrator, including the names, last known residence

11   addresses, and social security numbers as well as dates of employment. (Dkt. 60-2, Cita Decl., ¶

12   5.)

13        The Settlement Administrator set up a dynamic website for Class Members where they

14   could submit claims forms online, read a description of the case, see the Notices, download

15   important documents, see important dates, and contact the Settlement Administrator and/or

16   Plaintiffs' counsel. (*Id.*, ¶ 3(c).) The Settlement Administrator received nineteen (19) claims

17   forms submitted by Class Members through the website. (*Id.*, ¶ 11.)

18        The Settlement Administrator set up a telephone support line with a toll-free number to

19   answer Class Member questions and submit address changes. (*Id.*, ¶ 3(d).) The Settlement

20   Administrator received thirteen (13) calls from Class Members via the toll-free number. (*Id.*, ¶

21   10.)

22        On September 6, 2019, the Settlement Administrator mailed the Notice Packet to all

23   class members. (*Id.*, ¶ 7.) The Settlement Administrator received eleven (11) returned Notice

24   Packets, of which one had a forwarding address. (*Id.*, ¶ 9.) The Settlement Administrator was

25   able to locate eight (8) new addresses and re-mailed the Notice Packet to those Class Members.

26   (*Ibid.*) Ultimately, two (2) Notice Packets remain undeliverable. (*Ibid.*)

27        On October 8, 2019, the Settlement Administrator mailed reminder postcards to fifty-

28   eight (58) Rule 23 Class Members who had not yet submitted a Claim Form or Opt-Out Request

1   to remind them of the Response Deadline in the case. (*Id*., ¶ 8.)

2          The Settlement Administrator has received fifty-one (51) claim forms from Rule 23

3   Class Members. (Supp. Cita Decl., ¶ 6.) Participating Class Members have claimed 67.14% of

4   the available funds. (*Ibid*.)

5          No Class Member has submitted an objection and one Class Member has excluded

6   herself from the Settlement. (Dkt. 60-2, Cita Decl., ¶¶ 13-14.)

7          Class Members can expect to receive $74.19 per workweek. (Supp. Cita Decl., ¶ 7.) The

8   smallest possible award will be $10.39, the largest award will be $18,760.36 and the average

9   award is $7,926.79. (*Id*.)

10         PAGA Class Members can expect to receive $3.96 per 1 PAGA workweek. (Supp. Cita

11  Decl., ¶ 5.) The smallest possible PAGA award will be $6.78, the highest PAGA award is

12  $418.46 and the average award is $326.98. (*Id*.)

13         There is $193,993.82 in unclaimed funds. (Suppl. Cita Decl., ¶ 8.)

## IV.    SUMMARY OF SETTLEMENT TERMS

15         The details of the Settlement are set forth in the Joint Stipulation of Class Action

16  Settlement and Release. (Dkt. 52-2, Joint Stipulation of Class Action Settlement and Release,

17  Ex. 1 to Decl. of Wynne.) A summary is set forth below:

18  **A.    Settlement Fund**

19         In return for a release of all claims that were asserted in the action, Defendant shall

20  create a non-reversionary $1,250,000 gross settlement fund. After certain deductions identified

21  below, all Class Members in the Rule 23/FLSA Classes will be paid on a pro rata basis based on

22  the number of weeks they worked for Defendant as an ASM during the settlement period.

23         The deductions from the gross settlement fund include attorneys' fees and costs, class

24  representative service awards and the costs and fees of the Settlement Administrator. Two-

25  thirds of the Potential Gross Settlement Proceeds shall constitute the "Settlement Class Member

26  Allocation" and shall be available for Claiming Settlement Class Members to claim their

27  Individual Settlement Awards, as defined below. The remaining one-third of the Potential Gross

28  Settlement Proceeds shall constitute the Settlement's PAGA Allocation.

**B.      Class Definitions**

The settlement class definition for the Settlement Class is as follows:

Those individuals who were employed by Defendant as Assistant Store Managers (i) in California on or after January 24, 2014 or (ii) in Florida or Oregon on or after January 24, 2015; and who (i) did not enter into a severance agreement or an arbitration agreement with Defendant after March 6, 2016 or (ii) submitted a declaration in support of Plaintiffs' Motion for Conditional Class Certification and did not enter into a severance agreement with Defendant.

For purposes of this settlement only: (1) members of the Settlement Class who worked as Assistant Store Managers ("ASMs") for Defendant in California shall be known as the "Rule 23 Class"; and (2) members of the Settlement Class who worked as ASMs for Defendant in Oregon or Florida shall be known as the "FLSA Class."

The settlement class definition for the PAGA Class is as follows:

All current and former employees of Orchard Supply Company, LLC in California with the title of "Assistant Store Manager" on or after November 20, 2016.

These class definitions have been tailored to reflect that numerous ASMs who would otherwise fall under the class definitions but are precluded from taking part in the Settlement because they have either entered into a valid arbitration agreement and/or entered into a severance agreement with Defendant or both.

**C.      Class Representative and Class Counsel**

The Court appointed plaintiffs Lawrence C. Branco and Kathy Elliott as the class representatives, and their counsel, Edward J. Wynne of Wynne Law Firm, and Gregg I. Shavitz of Shavitz Law Group, as class counsel.

**D.      Notice Procedure**

The Court appointed Simpluris, Inc. as the Settlement Administrator. After updating the database provided by Defendant through the National Change of Address database, the Claims Administrator mailed the Notice Packets to each class member. (Dkt, 60-2, Cita Decl., ¶¶ 6-7.) The Class Notice Packets included a Claim Form, an opt-out form and an adjustment form. In addition, the Settlement Administrator established a website and a toll-free telephone number

for Class Member inquiries. (*Id.*, ¶ 3.) A reminder post card was mailed to Class Members who had not yet submitted a Claim Form or Opt-Out Request to remind them of the response deadline in the case. (*Id.*, ¶ 8.)

**E.    Plan of Allocation**

**1.    Settlement Class Member Allocation:** The Settlement Class Member Allocation is estimated to be approximately $663,250.00. (Supp. Cita Decl., ¶ 3.) Payments to individual class members shall be calculated and apportioned from the Net Settlement Amount based on the amount of work weeks during the settlement class period. Class Members can expect to receive approximately $74.19 per workweek after deductions. (Supp. Cita Decl., ¶ 7.)

**2.    Attorney's Fees, Costs and Enhancements:** Pursuant to the parties' agreement, Plaintiffs' counsel has asked the Court to award 25% of the settlement fund or $312,500[1], plus reimbursement of out-of-pocket litigation expenses not to exceed $27,500. (Dkt. 52-2.) In addition, Plaintiffs are requesting $10,000 class representative service awards each.[2]

**3.    LWDA payment:** The parties have agreed to pay the LWDA $218,749.99 (75 percent of a $291,666.66 PAGA penalty allocation) per Labor Code § 2699 (i) to settle this claim. On June 11, 2019, Plaintiffs submitted the proposed Settlement to the California Labor Workforce Development Agency ("LWDA") per California Labor Code § 2699(l)(2). (Dkt. 60-1. Decl. of Wynne, ¶ 2.)

**4.    Notice Administration:** The parties agreed to use Simpluris, Inc. as the Settlement Administrator.  Simpluris, Inc. agreed to cap its fee at under $15,000.00. (Dkt. 52-1, ¶ 19.) To date, Simpluris' total cost for services in connection with the administration of this settlement, including fees incurred and anticipated future costs for completion of the

---

[1] This is within the "usual range" of 20 to 30 percent for common fund fee recoveries. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (2002).

[2] Class representatives Branco and Elliott both submitted declarations describing their contributions to the case and justifying their class representative awards as part of Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs and Class Representative Award. (Dkt. 59-3 (Declaration of Lawrence C. Branco) & Dkt. 59-4 (Declaration of Kathy Elliott).) In light of the Court's comments at the February 6, 2020 hearing, Plaintiffs provide supplemental argument *infra.* on why the requested enhancement awards are appropriate.

administration, are $8,000. The $7,000 that was allocated for the cost of administration was reallocated to the Net Settlement Amount. (Supp. Cita Decl., ¶ 9, Ex. A.)

**5.      Cy Pres Beneficiaries:** Pursuant to the Stipulation for Settlement, unclaimed funds will be paid to a *cy pres* beneficiary. (Dkt. 52-2, pp. 13-14.) There is $193,993.82 in unclaimed funds. (Supp. Cita Decl., ¶ 8.) The Parties have met and conferred and agree that the residual should be split evenly, i.e., 50% each, between the following two organizations: Habitat for Humanity California and Equal Access Fund.

Habitat for Humanity is an umbrella organization for the State which assists 40 California affiliates that serve low-income families by, *inter alia*, providing home-improvement and home-building services to an average of 400 homes per year in California.[3] Equal Access Fund provides a source of funds aimed at helping Californians who need legal services, but can't afford to hire a lawyer.[4]

## IV.      THE STANDARDS FOR FINAL APPROVAL ARE SATISFIED

**A.      The Standard for Final Approval**

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

**B.      The Settlement is Entitled to a Presumption of Fairness**

A class action settlement is entitled to a presumption of fairness when: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation;

---

3 Habitat for Humanity California: https://www.habitatca.org/about/.

and, (4) the percentage of objectors is small. *Dunk v. Ford Motor Company,* 48 Cal.App.4th 1794, 1802 (1996) quoting *Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir. 1982).

### 1.    The Settlement Was Reached Through Arm's-Length Negotiations

This settlement was the result of arm's-length negotiations overseen by experienced, well-regarded mediator, Jeffrey A. Ross. While no settlement was reached at mediation, the parties continued to negotiate and subsequently reached the Settlement that is before this Court.

### 2.    Substantial Investigation Has Been Completed

The stage of the proceedings and the amount of investigation completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 616-17 (N.D. Cal. 1979). Here, extensive discovery was conducted as outlined in the Motion for Preliminary Approval, including, but not limited to, multiple sets of written discovery, the exchange of documents, depositions of the Plaintiffs and Defendant's corporate representative, and informal discovery in terms of contacts with class members by Class Counsel to obtain declarations from them.

### 3.    Class Counsel is Experienced and Endorses the Settlement

As detailed in the Motion for Preliminary Approval, experienced counsel operating at arm's-length has weighed all of the risk factors and endorses the proposed settlement. The view of the attorneys actively conducting the litigation is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985); see also, *Ellis*, 87 F.R.D. at 18; *Boyd,* 485 F. Supp. at 616-17.

Class Counsel has extensive wage and hour class action experience. (Dkt. 59-1, ¶¶ 2-9; Dkt. 59-2, ¶¶ 4-11.) Thus, Class Counsel is experienced and qualified to evaluate the class

---

4 Equal Access Fund:  https://www.calbar.ca.gov/Access-to-Justice/Legal-Services-Trust-Fund-Program/Equal-Access-Fund

claims and viability of the defenses. Class Counsel is satisfied that the recovery for each Class Member is fair and reasonable taking into consideration the potential recovery as compared to the actual recovery, the stage of the litigation when the settlement was reached, the risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each Class Member's claim to the amounts received. This settlement is fair, adequate and reasonable and in the best interests of the Class.

**4.    There are No Objections to the Settlement**

Perhaps the most significant endorsement for the proposed settlement in this case is the fact that <u>not a single Class Member</u> has objected to any aspect of the proposed settlement. Class Members were specifically provided with the option of objecting to the terms of the Settlement and not a single objection has been received.  The final factor in *Dunk* is that the percentage of objectors is small.  Moreover, there is only one Class Member who has excluded herself from the Settlement. This Court should properly construe the dearth of any expressed opposition to the Settlement as a very strong indicator that the Class Members view the settlement as fair, adequate and reasonable.

**C.    The Risk and Expense of Further Litigation**

At the final approval hearing the Court may consider other relevant factors, such as the strength of the plaintiff's case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant and the reaction of the Class Members to the proposed settlement. *Officers for Justice,* 688 F.2d at 624. "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, 48 Cal.App.4th at 1801.

The risks, complexity and expenses of this action and expected duration of this litigation all weigh in favor of final approval. Plaintiffs assert they have a strong case in favor of being granted certification and on the merits based on the evidence gathered thus far and reflected in Plaintiffs' Motion for Conditional Certification. (Dkt. 44.) Nevertheless, Defendant has at all

1   times maintained that the structuring of the duties and responsibilities of the ASM position met

2   the tests of the administrative and executive exemptions under California law and the FLSA.

3   For instance, in 2014, Defendant restructured the ASM position by creating the ASM-Sales and

4   ASM-Operations positions. In the process of the re-structuring the ASM position, Defendant

5   took steps to bolster the exempt status of the ASM-Operations position.

6         Moreover, Defendant has at all times maintained that there is significant variation

7   among the putative class members such that Plaintiffs would be unable to certify the proposed

8   classes. In particular, Defendant would assert that the named plaintiffs worked in OSH store

9   locations with lower sales volumes, smaller staffs and smaller labor budgets compared to other

10   OSH store locations with higher sales volume, larger staffs and larger labor budgets. Defendant

11   would argue that Plaintiffs, having worked in lower volume stores, are not typical of other ASM

12   who worked in higher volume stores. Given the size of the store and the commensurate staffing,

13   Defendant would argue ASMs in larger stores would be primarily engaged in exempt,

14   managerial duties such as supervising, observing, coaching and training of hourly associates.

15   Likewise, Defendant would argue these ASMs regularly and customarily exercised discretion

16   and independent judgment in the management, scheduling, hiring/firing and discipline of hourly

17   associates. Defendant would argue that these were the realistic expectations for the position and

18   Plaintiffs would be outliers. Defendant would ultimately argue that Plaintiffs were not typical of

19   the proposed class and that individual issues predominate over common ones in urging the

20   Court to deny Plaintiffs' certification of the misclassification claim.

21         As set forth in Plaintiffs' Motion for Preliminary Approval, this counsel's experience in

22   *Duran v. U.S. Bank N.A.*, 59 Cal.4th 1 (2014) perhaps best exemplifies another area of risk

23   inherent in complex litigation. In sum, after getting the case certified and prevailing at trial, the

24   judgment was reversed by the Court of Appeal, affirmed by the Supreme Court, and plaintiffs'

25   second effort at certification in the Superior Court was denied (and affirmed by the Court of

26   Appeal) after 17 years of hard-fought litigation. Thus, even prevailing at trial is no guarantee of

27   success.

28         It is also worth noting that Defendant closing its doors in late November 2018 presents

its own unique set of challenges that weigh in favor of settlement at this juncture. The entire putative class is seeking new employment and many of the ASMs were long-term employees of Defendant. Proceeds from this Settlement may alleviate the hardships they face in securing new employment. From a logistical standpoint, ASMs and other witnesses have dispersed, making it more difficult to ensure participation, which makes it more difficult to gather evidence in support of certification or the merits in preparation for trial. Thus, it is Counsels' informed opinion that benefits of this settlement outweigh the risk and that settlement at this juncture is in the best interests of the class.

**D.    The Amount Offered In Settlement**

**1.    Evaluation of the Overall Settlement Amount**

The gross settlement amount is $1,250,000. The net settlement amount is $663,250.00[5] after deductions for attorney's fees, litigation expenses, class representative awards, settlement administration costs and the LWDA payment. The Settlement is non-reversionary and thus no amount will revert back to Defendant.

As set forth above, Class Members can expect to receive approximately $74.19 per workweek after deductions. The highest gross Individual Settlement Payment is estimated to be approximately $18,760.36, the lowest gross Individual Settlement Payment is estimated to be approximately $10.39 and the average gross Individual Settlement Payment is estimated to be approximately $7,926.79.

Defendant has represented that Class Members, on average, earned $56,000 in annual salary during the class period. (Dkt. 60-1, Decl. of Wynne, ¶ 3.) Using that salary figure, Class Members' hourly rate was approximately $26.92 and the premium overtime rate was approximately $40.38. (*Id.*) Thus, the settlement amount per workweek of $74.19 represents 1.83 hours of overtime per workweek paid to the Class Members. Based on communications with Class Members regarding the number of hours worked, Plaintiffs' Counsel estimates that ASMs worked, on average, 10 hours of overtime per week. (Dkt. 60-1, Decl. of Wynne, ¶ 4.)

---

5 This amount includes both the Rule 23/FLSA Class payments and the PAGA Class payments.

Thus, the Settlement provides for almost 20% of the total exposure of overtime hours worked by the ASMs.

This settlement is also momentous considering many Class Members were offered and could have accepted severance agreements as OSH closed all of its locations nationally. (Dkt. 60-1, Decl. of Wynne, ¶ 5.) A Class Member executing a severance agreement and accepting its benefits, precluded his/her ability to participate in the Settlement. (*Id.*) Class Members were generally offered one month's salary as severance which – using the average salary figure of $56,000 above – amounts to $4,666.67, less withholdings.[6] The severance agreements also contained a general release far broader than the claims released by Class Members in this Settlement. (*Id.*)

Here, Class Members who did not accept the severance agreement and who are set to receive the average amount of $7,926.79 will receive 1.7 times the estimated amount offered by Defendant in severance. (Dkt. 60-1, Decl. of Wynne, ¶ 6.) Class Members who did not accept the severance and are receiving the maximum pro rata share of $18,760.36 are set to receive *approximately 4 times the estimated amount offered to them in severance*.

In Class Counsel's experience, this settlement compares favorably to other recently-approved settlements of class actions alleging non-payment of overtime based on misclassification under the executive exemption. As set forth above, Class Members are set to receive to an estimated $74.19 per workweek. In *Brinkel et al. v. Westamerica Bank*, Marin Superior Court Case No. CIV 1303112, for example, the class members in that case received $70.63 per workweek. The amount per workweek here compares favorably to that settlement. Given all the risk of continued ligation as identified above, the amount offered in settlement is very reasonable.

### 2.    Evaluation of the PAGA Allocation

The Parties have agreed to evaluate the PAGA claims at $291,666.66. Pursuant to the

---

6 Named Plaintiff Kathy Elliott's severance package offered her $4,320.94, minus applicable withholdings. (Dkt. 60-1. Decl. of Wynne, ¶ 5, Ex. 2.)

1  agreement, the PAGA Class will receive 25% of that amount or $72,916.67, which will be

2  distributed on a pro rata basis. (Dkt. 60-2, Cita Decl., ¶ 17.) The smallest possible PAGA award

3  will be $6.78, the highest PAGA award is $418.46 and the average award is $326.98. (Dkt. 60-

4  2, Cita Decl., ¶ 18.)

5          The parties submit this amount is fair, reasonable and adequate. First, any settlement

6  with Defendant would require Plaintiffs to fold-back in the non-PAGA claims thus eliminating

7  a pure PAGA settlement. Thus, this is not a PAGA-only settlement. Second, the Labor

8  Workforce Development Agency was given notice on June 11, 2019 of the settlement and,

9  specifically, the amount that was being attributed to PAGA. (Dkt. 60-1, Decl. of Wynne, ¶ 2,

10  Ex. 1.) As of this date, the LWDA has not expressed any objection to the allocation. (*Id.*) Third,

11  the amount requested vastly exceeds amounts awarded by other courts both in terms of relative

12  amount and absolute amount. In *Villalobos v. Calandri Sonrise Farm LP*, No. CV 2122615 PSG

13  (JEMx), 2015 WL 12777959, (C.D. Cal. Dec. 4, 2015), Judge Gutierrez approved a $5,900

14  allocation to the LWDA representing .8% of the settlement. 2015 WL 12777959, at *3. In

15  *Bautista v. Harvest Management Sub LLC*, 2014 WL 12579822 (C.D. Cal. July 14, 2014), the

16  court approved a $15,000 allocation to the LWDA representing .6% of the settlement. 2014 WL

17  12579882 at *1. See also, *In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx),

18  2009 WL 995864, at *1 (S.D. Cal. April 13, 2009) (approving PAGA settlement of 2% or

19  $20,000); *Hopson v. Hanesbrands, Inc.*, CV 08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal.

20  April 3 2009) (approving a PAGA settlement where no allocation was made to the claim). See,

21  e.g., *Nordstrom Comm'n Cases*, 186 Cal.App.4th 576, 589 (2010) (approving settlement of

22  wage and hour class claims and PAGA claims under which no money was allocated to the

23  PAGA claims).

24          Here, the $218,750.00 allocation to the LWDA represents 17.5% of the Settlement

25  amount and therefore vastly exceeds PAGA allocations that courts routinely approve.

26  **E.    The Requested Class Representative Awards Should be Granted**

27          Plaintiffs have requested $10,000 each as class representative enhancement awards. The

28  Court, at the hearing on Final Approval, expressed a tentative opinion that the awards should be

1    $5,000 each. For the reasons set forth below, Plaintiffs submit that good cause exists to depart

2    from the presumptively reasonable benchmark of $5,000.

3        The presumption of $5,000 finds its roots in *Hopson v. Hanesbrands Inc.,* No. CV-08-

4    0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009). In *Hopson*, the plaintiff asked for

5    $5,000 while the average class member recovery was approximately $1,500 and the percent of

6    the request was, in relation to the total settlement, 1.25%. *Id.* at *10. Addition, while the

7    plaintiff in *Hopson* certainly supported the litigation, there is no evidence that plaintiff had her

8    deposition taken or had to agree to forego future employment. *Ibid*. Here, on the other hand, the

9    average recovery is almost $8,000, the request represents just .8% of the total settlement, the

10   two Plaintiffs both had their depositions taken, had to forego future employment, and waive

11   their First Amendment Rights regarding the settlement. (Dkt. 59-3, Branco Del., ¶¶ 5-6; Dkt.

12   59-4, Elliott Decl., ¶¶ 5-6.)

13       In another case frequently cited by courts considering class representative enhancement

14   awards, *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009

15   WL 3562871 (N.D. Cal. Oct. 27, 2009). Similar to *Hopson*, there is no evidence of what

16   specifically the plaintiffs did to assist in the litigation there beyond spending "somewhat more

17   time assisting counsel than occurs in the average case." *Id.* at *5. Indeed, there is no evidence

18   the plaintiff had his or her deposition taken or gave up of the same rights Plaintiffs here have

19   had to. Even then, the court awarded $7,500 to one of the class representatives. *Ibid.*

20       Moreover, other cases before this Court where $5,000 was awarded are easily

21   distinguished, and, as such, support the requested award here. In *In re Linkedin User Privacy

22   Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015), plaintiff sought $7,500 as an award which was *opposed*

23   by defendant. In opposing the request, defendant argued that:

> Plaintiff was only added as a plaintiff in this litigation after consolidation and
> only after LinkedIn had already moved to dismiss the first consolidated
> complaint[4], no written discovery was ever served on her, she did not need to
> respond to any discovery, she was not deposed, and she did not attend any
> court hearing or settlement conference.

27   309 F.R.D. at 592. The facts here are the exact opposite. OSH is not opposing the request. The

28   Plaintiffs filed the original complaint. The Plaintiffs responded to OSH's written discovery. The

Plaintiffs had their depositions taken. And, the Plaintiffs were actively involved during mediation and thereafter. (Dkt. Nos. 59-3, ¶ 9 and 59-4, ¶ 9.)

Likewise, in *Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015), this Court rejected a departure from the benchmark of $5,000. However, in that case, while the plaintiffs reviewed the pleadings over the course of the litigation, there is no evidence that they had their depositions taken or waived any of the fundamental rights the Plaintiffs here have agreed to. 309 F.R.D. at 611.

Therefore, while Plaintiffs recognize that $5,000 is presumptively reasonable, the facts and circumstances of this settlement warrant an upward departure. Plaintiffs note that no Class Member has objected to the request after receiving notice. Also, while the Court commented that any amount not awarded would be redistributed to the Class, Plaintiffs submit that the amount to be redistributed would have a *de minimus* effect on Class Member recoveries. In light of the work they performed, the rights waived, the average recovery, and amount of the total settlement, an upward adjustment to $10,000 is reasonable and appropriate.

## V.    CONCLUSION

In light of the forgoing, Plaintiffs respectfully request that the Court grant the motion final approval of the class action settlement and motion for attorney fees and costs and class representative enhancement awards.

DATED: February 11, 2020                  WYNNE LAW FIRM


                                          By:    */s/ Edward J. Wynne*
                                          _____
                                          EDWARD J. WYNNE
                                          Attorney for Plaintiffs